NORFOLK DIVISION

F I L E D

FEB - 4 2016

CLERK
U.S. BANKRUPTCY COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLARD E. BARTEL, et al., | : | CONSOLIDATED UNDER |
| (Administrators for Estate of | : | MDL 875 |
| Joseph F. Zuegg) | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A-C PRODUCT LIABILITY TRUST, | : | E.D. PA CIVIL ACTION NO. |
| ET AL., | : | 2:11-31112-ER |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    January 29, 2016

        This case was transferred in January 2011 from the

United State District Court for the Northern District of Ohio to

the United States District Court for the Eastern District of

Pennsylvania, where it became part of the consolidated asbestos

products liability multidistrict litigation (MDL 875). The case

was assigned to the Court's maritime docket ("MARDOC"). Willard

E. Bartel and David E. Peebles ("Plaintiffs"), Administrators of

the Estate of Joseph Zuegg, allege that Mr. Zuegg ("Decedent" or

"Mr. Zuegg") was exposed to asbestos while working aboard

various ships. Plaintiffs assert that Decedent developed two

asbestos-related illnesses as a result of his exposure to

asbestos aboard those ships.

For the reasons that follow, the Court will deny
Defendants' motion.

## I.   BACKGROUND

In 1994, Mr. Zuegg brought claims for non-malignant
asbestos-related disease (now pursued by Plaintiffs after the
death of Mr. Zuegg) against various defendants, including
*shipowners represented by Thompson Hine LLP ("Defendants" or the*
"Thompson Hine Shipowners"). By way of Order dated May 2, 1996,
Judge Charles Weiner[1] dismissed those claims administratively,
leaving open the possibility for the action to be pursued at a
later, unspecified date.[2] Approximately five years after he filed

---

[1]      Judge Weiner presided over MDL 875 from its inception
in 1991 until his passing in 2005. In 2005, Judge James Giles
was designated to preside over MDL 875, where he remained until
his resignation from the bench in 2008. In October 2008, Judge
Eduardo Robreno, the undersigned, was appointed to succeed Judge
Giles, and he has presided over MDL 875 since that date.

[2]      On May 2, 1996, Judge Weiner administratively
dismissed all pending MARDOC claims without prejudice, noting
that the claimants had "provide[d] no real medical or exposure
history," and had been unable to do so for months. In re
Asbestos Prods. Liab. Litig. (No. VI), No. 2 MDL 875, 1996 WL
239863, at *1-2 (E.D. Pa. May 2, 1996). Judge Weiner also
ordered that these "asymptomatic cases" could be activated if
the plaintiffs began to suffer from an impairment and could show
(1) "satisfactory evidence [of] an asbestos-related personal
injury compensable under the law," and (2) "probative evidence
of exposure" to a defendant's products. Id. at *5. On March 14,
1997, Judge Weiner applied that dismissal order to all future
MARDOC cases that had not yet been filed. In 2002, the MDL Court
ordered that administratively dismissed cases remain active for
certain purposes (e.g., entertaining settlement motions and

his asbestos action (and approximately three years after it was
dismissed), in March of 1999, Mr. Zuegg filed for bankruptcy
pursuant to Chapter 7 of the bankruptcy code, without listing
his asbestos claims as an asset in the bankruptcy filing.
Approximately three months later, in June of 1999, the
bankruptcy case was closed. Thereafter, in August of 2000, Mr.
Zuegg was diagnosed with asbestos-related cancer, giving rise to
a claim for a malignant asbestos-related disease. On January 27,
2011 (approximately twelve years after he was discharged from
bankruptcy, and approximately seventeen years after Mr. Zuegg
first filed his asbestos action), the MDL Court reinstated Mr.
Zuegg's asbestos action, which had been dismissed by Judge
Weiner in 1996. A summary of this timeline of events is as
follows:

- 1994 - Asbestos action filed (non-malignancy claims)
- May 1996 - Asbestos action administratively dismissed
- March 1999 - Bankruptcy action filed
- June 1999 - Bankruptcy action closed
- August 2000 - Cancer diagnosis (malignancy claims)
- January 2011 - Asbestos action reinstated by MDL Court

---

orders, motions for amendment to the pleadings, etc.), and in
2003, clarified that the administrative dismissals were "not
intended to provide a basis for excluding the MARDOC claimants
from participating in settlement programs or prepackaged
bankruptcy programs[.]" In re Am. Capital Equip., 296 Fed. App'x
270, 272 (3d Cir. 2008) (quoting In re Asbestos Prods. Liab.
Litig. (No. VI), Order Granting Relief to MARDOC Claimants with
Regard to Combustion Eng'g, Inc., No. 2 MDL 875 (E.D. Pa. Feb.
19, 2003)).

The Thompson Hine Shipowners have moved for summary
judgment, arguing that (1) Plaintiffs' non-malignancy claims are
barred by way of judicial estoppel because Mr. Zuegg failed to
disclose the asbestos action as an asset in his bankruptcy
filing, and (2) Plaintiffs cannot pursue any of the asbestos
claims in the asbestos action (neither the initial non-
malignancy claims nor his post-petition malignancy claims)
because the entire asbestos action is now owned by the
bankruptcy estate.

## II. LEGAL STANDARD

### A. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine
dispute as to any material fact and the moving party is entitled
to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion
for summary judgment will not be defeated by 'the mere
existence' of some disputed facts, but will be denied when there
is a genuine issue of material fact." Am. Eagle Outfitters v.
Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)).
A fact is "material" if proof of its existence or non-existence
might affect the outcome of the litigation, and a dispute is
"genuine" if "the evidence is such that a reasonable jury could

4

return a verdict for the nonmoving party." Anderson, 477 U.S. at
248.

In undertaking this analysis, the court views the
facts in the light most favorable to the non-moving party.
"After making all reasonable inferences in the nonmoving party's
favor, there is a genuine issue of material fact if a reasonable
jury could find for the nonmoving party." Pignataro v. Port
Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing
Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir.
1997)). While the moving party bears the initial burden of
showing the absence of a genuine issue of material fact, meeting
this obligation shifts the burden to the non-moving party who
must "set forth specific facts showing that there is a genuine
issue for trial." Anderson, 477 U.S. at 250.

B.    The Applicable Law

The parties appear to assume that Defendants' legal
arguments regarding "judicial estoppel" and the "real party in
interest" are matters of federal law that should be decided in
the first instance by the Court. The Court agrees with this
approach. See Ryan Operations G.P. v. Santiam-Midwest Lumber
Co., 81 F.3d 355, 358 (3d Cir. 1996).[3] In matters of federal law,

---

[3]      "A federal court's ability to protect itself from
manipulation by litigants should not vary according to the law

the MDL transferee court applies the law of the circuit where it

sits, which in this case is the law of the U.S. Court of Appeals

for the Third Circuit. Various Plaintiffs v. Various Defendants

("Oil Field Cases"), 673 F. Supp. 2d 358, 362-63 (E.D. Pa. 2009)

(Robreno, J.). Therefore, the Court will apply Third Circuit law

in deciding the issues raised by Defendants' motion.

### III. THE PARTIES' ARGUMENTS

#### A.   Judicial Estoppel (Non-Malignancy Claims)

          Defendants contend that Plaintiffs' non-malignancy

claims are barred on grounds of judicial estoppel. Specifically,

they contend that Mr. Zuegg took irreconcilably inconsistent

positions in his bankruptcy proceeding and the instant

proceeding. Defendants state that Mr. Zuegg concealed the

existence of his non-malignancy asbestos claims when filing for

bankruptcy by not reporting them as pending or likely claims on

Schedule B ("Personal Property"), while simultaneously asserting

such claims in the current (and then-already-pending) asbestos

action. They further assert that a finding of bad faith is

warranted because Mr. Zuegg had knowledge of the non-malignancy

asbestos claims at the time that he filed for bankruptcy and had

---

of the state in which the underlying dispute arose." Ryan
Operations, 81 F.3d at 358 n.2.

a motive to conceal the claims from the Bankruptcy Court (i.e., to keep any proceeds of the claims while reducing the amount of assets available for distribution amongst the creditors - a motive Defendants assert is common to nearly all debtors in bankruptcy).

Finally, Defendants contend that no lesser remedy is warranted because the sanction of barring the non-malignancy asbestos claims is necessary to (1) keep Plaintiffs from profiting from the omission and (2) preserve the integrity of the bankruptcy proceedings.

Plaintiffs contend that the non-malignancy asbestos claims are not barred on grounds of judicial estoppel. First, Plaintiffs contend that Mr. Zuegg did not take inconsistent positions between his bankruptcy filing and the present asbestos action because at the time of his bankruptcy filing - and throughout the entire duration of that action - his non-malignancy asbestos claims were dismissed, such that he was not required to list them as an asset in his bankruptcy action. Moreover, Plaintiffs argue that even if Mr. Zuegg should have identified the non-malignancy asbestos claims, the failure to do so was a good faith mistake such that judicial estoppel is not warranted.

7

Second, Plaintiffs assert that Defendants bear the burden of establishing bad faith, but have no evidence that Mr. Zuegg acted in bad faith when he did not list his non-malignancy asbestos claims as an asset in his bankruptcy filing. Additionally, Plaintiffs assert that bad faith cannot be proven in light of the fact that those claims were dismissed long before he filed for bankruptcy and were only reinstated by the MDL Court long after the bankruptcy was closed.

### B.   Real Party in Interest/Standing

#### 1.   Non-Malignancy Claims (Initial Claims)

In the alternative (as to the non-malignancy claims initially asserted in Mr. Zuegg's asbestos action), Defendants contend that Plaintiffs have no right to pursue the non-malignancy claims because the claims no longer belong to Plaintiffs and instead belong to the bankruptcy trustee. Specifically, Defendants argue that, even though Mr. Zuegg did not report these asbestos claims as assets in the bankruptcy filing, as required by 11 U.S.C. § 541(a)(1), those claims automatically became part of the bankruptcy estate when the bankruptcy petition was filed. As a result, they assert that only the bankruptcy trustee can administer the claims.

8

Defendants also argue that, because Mr. Zuegg did not reveal the non-malignancy asbestos claims, such that they were never properly scheduled as assets, the trustees were incapable of passing those claims back to Mr. Zuegg through abandonment of any remaining assets not administered (as would normally happen pursuant to 11 U.S.C. § 554). As such, Defendants assert that, even though the bankruptcy action has closed, the rights to the non-malignancy asbestos claims did not revert back to Mr. Zuegg upon that closure and instead remain with the trustee, such that Plaintiffs may not now pursue them.[4]

Plaintiffs assert that, because the non-malignancy asbestos claims were dismissed during the entire pendency of the bankruptcy action, they were never assets of the bankruptcy estate – regardless of whether or not Mr. Zuegg disclosed them. In short, Plaintiffs argue that the bankruptcy estate could not have an asset that was not in existence at the time of the bankruptcy.

---

[4]      Defendants also assert that Plaintiffs may only pursue claims held by Mr. Zuegg at the time of his death and that, because the claims belonged to the bankruptcy trustee at the time of Mr. Zuegg's death, there is no way Plaintiffs can salvage those claims now. In support of this argument, Defendants rely upon two decisions regarding FELA: Flynn v. New York, N.H., & H.R. Co., 283 U.S. 53, 56 (1931), and Michigan Central R. Co. v. Vreeland, 227 U.S. 59, 70 (1913).

2.    Malignancy Claims (Post-Petition Claims)

In their reply brief (as to the malignancy claims that

arose post-petition), Defendants assert that Mr. Zuegg's claims

for malignant asbestos-related disease (based upon his post-

petition diagnosis of cancer) are property of the estate, such

that Plaintiffs also lack standing to pursue these claims –

despite the fact that the diagnosis of cancer did not occur

until after Mr. Zuegg's bankruptcy action was filed (and closed)

– because those claims are sufficiently rooted in his pre-

bankruptcy past to constitute property of the estate.[5]

Specifically, Defendants argue that, under Segal, any new claim

that is "sufficiently rooted in the pre-bankruptcy past" should

be included in the debtor's bankruptcy estate, 382 U.S. at 380,

and that, since the asbestos exposures (and the non-malignant

asbestos injury) arose pre-bankruptcy, any claims for injuries

arising therefrom (such as Mr. Zuegg's cancer claims) should be

considered part of the bankruptcy estate because they are

"sufficiently rooted in the pre-bankruptcy past."

---

[5]    In support of this contention, Defendants rely
primarily upon Segal v. Rochelle, 382 U.S. 375, 380 (1966), and
In re Richards, 249 B.R. 859, 861 (Bankr. E.D. Mich.
2000)(involving a post-petition asbestos claim). In addition,
Defendants also cite to a number of cases that did not involve
an asbestos claim: In re Webb, 484 B.R. 501 (Bankr. M.D. Ga.
2012); In re Salander, 450 B.R. 37, 46 (Bankr. S.D.N.Y. 2011);
In re Strada Design Assocs., Inc., 326 B.R. 229, 236 (Bankr.
S.D.N.Y. 2005); and In re Patterson, 2008 WL 2276961 (Bankr.
N.D. Ohio June 3, 2008).

Plaintiffs assert that Mr. Zuegg's claims for malignant asbestos-related disease (based upon his post-petition diagnosis of cancer) are not property of the estate – and never were – because they did not even arise until after Mr. Zuegg was discharged from bankruptcy. In support of this argument, Plaintiffs cite to this Court's decision, <u>Nelson v. A.W. Chesterton</u>, 2011 WL 6016990 (E.D. Pa. Oct. 27, 2011) (Robreno, J.), which held that maritime law follows the "two-disease rule" such that Mr. Zuegg's cancer diagnosis was a second and separate malignant disease, which gave rise to a second and separate cause of action distinct from the cause of action on which his asbestos action was initially filed. As such, Plaintiffs contend that, even if the Court should determine that Mr. Zuegg's non-malignancy claims are property of the bankruptcy estate that Plaintiffs are now barred from pursuing, the post-petition malignancy claims (for cancer) are not property of the estate (and never were), such that Plaintiffs may still pursue those claims free and clear of any debts not fully paid to creditors in the bankruptcy action.

## IV. DISCUSSION

The bankruptcy code requires debtors seeking benefits under its terms to schedule, for the benefit of creditors, all

11

his or her interests and property rights. Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 (3d Cir. 1988); 11 U.S.C. §§ 521, 1125. This duty of disclosure includes not only pending lawsuits or lawsuits the debtor intends to bring, but even any potential and likely causes of action. See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 322 (3d Cir. 2003); Oneida, 848 F.2d at 417 (providing that "[i]t has been specifically held that a debtor must disclose any litigation likely to arise in a non-bankruptcy contest"). However, debtors are not required to list "every 'hypothetical,' 'tenuous,' or 'fanciful' claim on an asset disclosure form." Freedom Med., Inc. v. Gillespie, No. 06-3195, 2013 WL 2292023, at *23 (E.D. Pa. May 23, 2013) (quoting Krystal Cadillac, 337 F.3d at 323).

Once the debtor has filed his bankruptcy petition, the bankruptcy estate – which in a Chapter 7 case is controlled by the trustee – "encompasses everything that the debtor owns upon filing a petition, as well as any derivative rights, such as property interests the estate acquires after the case commences." In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000). "While a bankruptcy case is pending, it is the trustee, and not the debtor, who has the capacity to pursue the debtor's claims." In re Kane, 628 F.3d at 637 (internal quotation marks and

12

citations omitted). Additionally, "[p]ursuant to 11 U.S.C. §

554(d), a cause of action which a debtor fails to schedule,

remains property of the estate because it was not abandoned and

not administered." Allston-Wilson v. Philadelphia Newspapers,

Inc., No. 05-4056, 2006 WL 1050281, at *1 (E.D. Pa. Apr. 20,

2006); see also In re Kane, 628 F.3d at 637 ("an asset must be

properly scheduled in order to pass to the debtor through

abandonment under 11 U.S.C. § 554") (quoting Hutchins v. IRS, 67

F.3d 40, 43 (3d Cir. 1995)).

        Typically, the only interests that a bankruptcy estate

owns are those that a plaintiff has at the time the petition is

filed. In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000)

(concluding that the bankruptcy "estate encompasses everything

that the debtor owns upon filing a petition") (emphasis added);

11 U.S.C. § 541(a)(1). However, any new, post-petition interest

(such as a legal claim) that is "sufficiently rooted in the pre-

bankruptcy past" can also constitute part of the debtor's

bankruptcy estate. See Segal v. Rochelle, 382 U.S. 375 (1966).

        Judicial estoppel is a "doctrine that seeks to prevent

a litigant from asserting a position inconsistent with one that

she has previously asserted in the same or in a previous

proceeding." Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,

81 F.3d 355, 358 (3d Cir. 1996) (internal quotation marks and

citations omitted). At the heart of judicial estoppel is the idea that "absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." Id. (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477 (1981), p. 782). However, this doctrine is "not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be." Id. It "should only be applied to avoid a miscarriage of justice" and "is only appropriate when the inconsistent positions are tantamount to a knowing misrepresentation to or even fraud on the court." Krystal Cadillac, 337 F.3d at 319, 324 (internal quotation marks and citations omitted). The "doctrine of judicial estoppel does not apply 'when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court.'" Ryan Operations, 81 F.3d at 362 (quoting Konstantinidis v. Chen, 626 F.2d 933, 939 (D.C. Cir. 1980)). "It is a fact-specific, equitable doctrine, applied at courts' discretion." In re Kane, 628 F.3d 631, 638 (3d Cir. 2010).

The Third Circuit Court of Appeals has formulated this test to help determine if judicial estoppel is appropriate:

> First, the party to be estopped must have taken two
> positions that are irreconcilably inconsistent.
> Second, judicial estoppel is unwarranted unless the
> party changed his or her position "in bad faith -
> i.e., with intent to play fast and loose with the
> court." Finally, a district court may not employ
> judicial estoppel unless it is "tailored to address
> the harm identified" and no lesser sanction would
> adequately remedy the damage done by the litigant's
> misconduct.

Krystal Cadillac, 337 F.3d at 319-20 (quoting Montrose Med. Grp.

Participating Sav. Plan v. Bulger, 243 F.3d 773, 779-80 (3d Cir.

2001)). The Third Circuit has further concluded that a

"rebuttable inference of bad faith arises when averments in the

pleadings demonstrate both knowledge of a claim and a motive to

conceal that claim in the face of an affirmative duty to

disclose." Id. at 321 (citing Oneida Motor Freight, 848 F.2d at

416-18); Ryan Operations, 81 F.3d at 363. However, the

application of this inference does not arise "from the mere fact

of nondisclosure." Ryan Operations, 81 F.3d at 364. Third

Circuit precedent makes clear that a court should conduct an

individualized factual assessment regarding, inter alia,

knowledge and motive of the debtor surrounding disclosure of

assets in a bankruptcy action. See id. at 363-64 (concluding

that the inference did not apply where the creditors were most

likely unaffected by the failure to disclose, the debtor

received no benefit from its non-disclosure, and that there was

no evidence that the debtor sought to conceal the claims deliberately); <u>Krystal Cadillac</u>, 337 F.3d at 321-324 (applying estoppel after analyzing the facts regarding knowledge and motive).

**V.   ANALYSIS**

   A.   Judicial Estoppel (Non-Malignancy Claims)

        Defendants contend that, because the dismissal of Mr. Zuegg's asbestos claims was merely administrative (such that the claims could be reinstated by Mr. Zuegg or the MDL Court at some point in the future), the claims were assets whose omission from Schedule B of the bankruptcy action constituted an inconsistent position between the two lawsuits and creates an inference of bad faith. Plaintiffs contend that because the claims had been in a dismissed stage for a while at the time of the bankruptcy filing, they were not in essence assets and did not need to be disclosed – and that, if they did constitute assets that should have been disclosed, the failure to disclose them was a good faith mistake.

        i.   Step One: Has Plaintiff Taken Two Irreconcilably
             Inconsistent Positions?

        It is undisputed that Mr. Zuegg did not list his non-malignancy asbestos claims (or any other legal claims) as assets

16

in his bankruptcy filing. His duty of disclosure included identifying pending lawsuits, lawsuits he intended to bring, and any potential and likely lawsuits. See Krystal Cadillac-Oldsmobile, 337 F.3d at 322. By failing to include his non-malignancy asbestos claims as an asset in his bankruptcy filings, Mr. Zuegg initially represented to the Bankruptcy Court that such an asset did not exist. Now, in the present action, Plaintiffs are pursuing those same claims that Mr. Zuegg represented did not exist. Accordingly, the two positions are irreconcilably inconsistent. See id. at 319-320.

> ii.   Step Two: Did Plaintiff Change His Position In Bad Faith

It is difficult to divine, through a prism of twenty years later, the exact nature and scope of the "administrative dismissals." See Bartel v. Various Defendants, 965 F. Supp. 2d 612, 617 (E.D. Pa. 2013) (Robreno, J.) (explaining the difficulty in attempting to discern orders that were entered over twenty years ago in the context of personal jurisdiction in the MARDOC cases).[6] While Judge Weiner's orders appear to invite

---

[6]         "Now, some 25 years later, the Court, with the assistance of counsel, is called upon to divine the meaning of less-than-pellucid orders entered long ago by prior courts, and to disentangle the parties from a web of procedural knots that have thwarted the progress of this litigation." Bartel, 965 F. Supp. 2d at 614.

reinstatement subject to certain conditions, none of the cases

that were administratively dismissed was ever reinstated from

1997 to 2009, until this Court, sua sponte, did so en masse.

That a layman would have had the foresight to know in 1999 when

he filed for Chapter 7 bankruptcy, that twelve years later a new

presiding Judge of the MDL would reopen his asbestos case,

albeit seventeen years after it was filed, would have required

unrealistic power of prescience. Rather, for all practical

purposes, the entire MARDOC litigation in the MDL Court -

including Mr. Zuegg's case - was in a "black hole," uncertain to

ever emerge again. See Hon. Eduardo C. Robreno, The Federal

Asbestos Product Liability Multidistrict Litigation (MDL-875):

Black Hole or New Paradigm?, 23 Widener L. J. 97, 126 (2013).

Under these circumstances, the Court finds that the

failure to disclose the non-malignancy asbestos claims was not

in bad faith, nor an attempt to play "fast and loose" with the

Bankruptcy Court. See Krystal Cadillac, 337 F.3d at 319-20.[7]

---

[7]      While the Third Circuit has said that, a "rebuttable
inference of bad faith arises when averments in the pleadings
demonstrate both knowledge of a claim and a motive to conceal
that claim in the face of an affirmative duty to disclose,"
Krystal Cadillac, 337 F.3d at 321, the Third Circuit has also
noted that an inference of bad faith does not always arise from
"the mere fact of non-disclosure." Ryan Operations, 81 F.3d at
364. Under the facts of this case, the Court need not decide
whether there was a lack of bad faith on the part of Mr. Zuegg,
or whether the inference of bad faith was rebutted, in that in
either event, the same result is obtained.

Accordingly, the Court does not find that Mr. Zuegg changed his

position "in bad faith" such that it warrants the application of

judicial estoppel. See Ryan Operations, 81 F.3d at 363.[8]

Accordingly, Defendants' motion for summary judgment on grounds

of judicial estoppel will be denied. See Anderson, 477 U.S. at

248-50.

B.    Real Party in Interest/Standing

1.    Non-Malignancy Claims (Initial Claims)

Defendants next contend that, despite Mr. Zuegg's

failure to list the non-malignancy asbestos claims on his

bankruptcy petition, the claims now belong to the bankruptcy

trustee (pursuant to 11 U.S.C. § 541(a)(1)) such that Plaintiffs

have no right to pursue them. They assert that, because Mr.

Zuegg did not properly schedule those claims as assets, the

trustees were incapable of passing those claims back to Mr.

Zuegg through abandonment of any remaining and unpursued assets

---

[8]    Additionally, the Court has reviewed the bankruptcy
petition filed by Mr. Zuegg, see ECF No. 79-2, and concludes
that, to the extent the law generally requires disclosures of
the type of claims that were pending at the time of the
bankruptcy filing, an omission of those claims may very well
have been based on a good faith mistake of what was required by
the documents, or a simple incorrect assessment of the viability
of his long-dormant claims. See Ryan Operations, 81 F.3d at 362.

as would normally happen pursuant to 11 U.S.C. § 554. Here, the Defendants' position has some initial merit.

It is true that, once a debtor has filed his bankruptcy petition, the bankruptcy estate, which is controlled by the trustee, "encompasses everything that the debtor owns upon filing a petition, as well as any derivative rights, such as property interests the estate acquires after the case commences," In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000), and that "it is the trustee, and not the debtor, who has the capacity to pursue the debtor's claims." In re Kane, 628 F.3d at 637 (internal quotation marks and citations omitted). It is also true that, "[p]ursuant to 11 U.S.C. § 554(d), a cause of action, which a debtor fails to schedule, remains property of the estate because it was not abandoned and not administered." Allston-Wilson, No. 05-4056, 2006 WL 1050281, at *1; In re Kane, 628 F.3d at 637 (quoting Hutchins, 67 F.3d at 43).

In the instant case, Mr. Zuegg erred by failing to disclose his administratively dismissed non-malignancy asbestos claims when he filed his bankruptcy petition. While the Court has held that this error was not in bad faith and thus not barred by judicial estoppel, these claims are nonetheless part of the bankruptcy estate as they were not only potential claims, but were realized claims technically held in abeyance by the

Court, and thus needed to be disclosed. Under these
circumstances, the claims remain part of the bankruptcy estate
and the trustee remains the real party in interest for such
claims, even after the bankruptcy was closed. See Killmeyer v.
Oglebay Norton Co., 817 F. Supp. 2d 681, 689 (W.D. Pa. 2011)
(granting the trustee's motion to substitute for the plaintiff
as the real party in interest since the debtor's unscheduled
pre-petition claim could only be administered by the trustee);
Saellam v. Norfolk S. Corp., No. 06-123, 2007 WL 1653737, at *4
(W.D. Pa. June 6, 2007) (concluding that "[b]ecause Plaintiff's
cause of action is part of the bankruptcy estate, and has not
been abandoned by the trustee, I hold Plaintiff is not the real
party in interest and that only the trustee in bankruptcy, as
sole representative of Plaintiff's estate, has standing to
pursue the instant lawsuit"); Allston-Wilson, 2006 WL 1050281,
at *1 (holding that where it was undisputed that the plaintiffs
cause of action arose before her bankruptcy and that she failed
to list the claim on her bankruptcy schedule, only the trustee
could pursue the claim); see also Biesek v. Soo Line R. Co., 440
F.3d 410, 413-14 (7th Cir. 2006) (concluding that the trustee
was the real party in interest for plaintiff's pre-bankruptcy
claim which he failed to list as a bankruptcy asset and
upholding the dismissal of the case since the claim did not

21

belong to the plaintiff and the trustee had not sought to
intervene).

Having held that the trustee, and not Plaintiffs, is
the real party in interest of the instant non-malignancy
asbestos claims, the Court must determine the appropriate
remedy. Given that the claims belong to the estate and that,
therefore, distributions of any recovery by the trustee should
be made in accordance with the priorities set forth in the
Bankruptcy Code, the trustee shall be given the opportunity to
decide, in the first instance, whether he/she will prosecute the
non-malignancy claims.

The Court does not underestimate the practical
difficulties involved. The bankruptcy case is now closed in the
Bankruptcy Court for the Eastern District of Virginia, and the
identity and whereabouts of the trustee are unknown to this
Court. To expedite the process of putting the trustee on notice
of the claims, the Court will direct the Clerk of this Court to
(1) create a copy of this memorandum and accompanying order
to be filed on the docket of Mr. Zuegg's bankruptcy case in the
Bankruptcy Court for the Eastern District of Virginia (No. 99-
bk-21499-SCS); (2) ascertain the identity of the trustee; and
(3) have served upon the trustee a copy of said memorandum and
order at his/her last known address. The trustee will have sixty

22

(60) days from the date of the filing of the order on the docket

of the Bankruptcy Court to seek to reopen the Bankruptcy action

and to advise this Court that he/she intends to prosecute the

instant non-malignancy asbestos claims.[9] In such event, the Court

will stay the instant proceedings while the bankruptcy estate is

reopened (providing monthly updates to the Court on the status

of the petition to reopen). Once the bankruptcy estate is

reopened, the trustee will have thirty (30) days from the date

of the reopening of the estate to move this Court to have

himself/herself added as the party-plaintiff in this case (with

respect to the non-malignancy claims only, with current

Plaintiffs continuing as the named plaintiffs with respect to

the malignancy claims).

        In the event that (1) the trustee fails to advise this

Court within sixty (60) days from the date the order is filed on

the docket of the Bankruptcy Court that he/she intends to

proceed with the instant claims,[10] (2) he/she declines to do so,

_____

[9]       The trustee will be ordered to provide a signed letter
certifying his/her (a) filing of a petition with the Bankruptcy
Court to reopen Mr. Zuegg's bankruptcy proceedings and (b)
intention to be added as party-plaintiff in the instant case
(with respect to the non-malignancy claims only).

[10]       It is not clear whether the trustee's failure to
respond to the Court's order would constitute an express or
implied abandonment of the instant claims under 11 U.S.C. § 554.
See Mele v. First Colony Life Ins., Co., 127 B.R. 82, 85-86
(D.D.C. 1991) (noting that the mere fact the trustee was

(3) he/she fails to provide a monthly status update, or (4)

he/she fails to move to be added as party-plaintiff (with

respect to the non-malignancy claims only) within thirty (30)

days of the reopening of the bankruptcy action, the Court will

give Plaintiffs an additional thirty (30) days[11] to provide this

Court with notice that they intend to (1) pursue only the

malignancy claims, or (2) petition the Bankruptcy Court for the

Eastern District of Virginia to reopen the bankruptcy

---

notified of the pending lawsuit, but failed to administer it,
would not necessarily mandate a finding of implied abandonment).
Importantly, however, the party seeking to demonstrate
abandonment bears the burden of persuasion. Hanover Ins. Co. v.
Tyco Industries, Inc., 500 F.2d 654, 657 (3d Cir. 1974). In
bankruptcy proceedings, the trustee's position is similar to
that of a fiduciary to both the debtor and creditors. Under the
bankruptcy code, the trustee must "investigate the financial
affairs of the debtor," 11 U.S.C. § 704(a)(4), and "collect and
reduce to money the property of the estate," 11 U.S.C. §
704(a)(1). Moreover, the trustee "has the duty to maximize the
value of the estate," Commodity Futures Trading Comm'n v.
Weintraub, 471 U.S. 343, 353 (1985), and "in so doing is bound
to be vigilant and attentive in advancing the estate's
interests." In re Martin, 91 F.3d 389, 394 (3d Cir. 1996). "In
sum, it is the trustee's duty to both the debtor and the
creditor to realize from the estate all that is possible for
distribution among the creditors." Id. (citing 4 Collier,
Bankruptcy ¶ 704.01 (15th ed.)).

[11]      This would be ninety (90) days from the date the
memorandum and order are filed on the Bankruptcy Court's docket
(for events pursuant to (1) or (2)); or thirty (30) days from
the date of the pertinent failure pursuant to (3) or (4).

proceedings and move in that court to compel abandonment of the instant non-malignancy claims. See 11 U.S.C. § 554(b).[12]

If notice is not received from either the trustee or Plaintiffs in the specified timeframe, the Court will dismiss Plaintiffs' case for failure to substitute the real party in interest. See Fed. R. Civ. P. 17(a)(3) ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted."). At this time, however, and under these circumstances, summary judgment in favor of Defendants on grounds of the real party in interest/standing will be denied without prejudice as to Plaintiffs' non-malignancy claims. Anderson, 477 U.S. at 248-50.

#### 2.   Malignancy Claims (Post-Petition Claims)

Defendants assert that Mr. Zuegg's claims for malignant asbestos-related disease (based upon his post-petition

---

[12]     In the event that Plaintiffs choose to pursue the non-malignancy claims, they will be ordered to provide a signed letter certifying their intention to petition the Bankruptcy Court to reopen Mr. Zuegg's bankruptcy proceedings and move the Bankruptcy Court to compel abandonment of those claims. The Bankruptcy Court for the Eastern District of Virginia is the court in the best position to provide the proper parties (including any potential creditors) with sufficient notice of Plaintiffs' motion to compel abandonment of the instant non-malignancy claims. See 11 U.S.C. § 554(b).

diagnosis of cancer) are also property of the estate,[13] such that Plaintiffs also lack standing to pursue these claims - despite the fact that the diagnosis did not occur until after Mr. Zuegg had been discharged from bankruptcy - because those claims are sufficiently rooted in his pre-bankruptcy past to constitute property of the estate.

Because Mr. Zuegg's cancer was not diagnosed until after he was discharged from bankruptcy (and there is no evidence in the record that he knew of his cancer prior to his discharge from bankruptcy), it is clear that he was not required to schedule his malignancy asbestos claims in the bankruptcy action. The question then, with respect to the post-petition malignancy claims, is whether the claims were nonetheless property of the bankruptcy estate by operation of law.

A bankruptcy estate typically owns only those interests that a plaintiff has at the time a petition is filed, In re O'Dowd, 233 F.3d at 202 , and 11 U.S.C. § 541(a)(1). However, the Supreme Court has held that, when a cause of action

---

[13]      This Court has ruled that, under maritime law, a Plaintiff's non-malignant asbestos related disease and subsequent malignant asbestos-related disease give rise to two separate and distinct causes of action. See Nelson v. A.W. Chesterton, 2011 WL 6016990 (E.D. Pa. Oct. 27, 2011) (Robreno, J.). As such the bankruptcy estate's ownership of a non-malignancy claim is entirely separate and distinct from its potential ownership of a second and subsequent malignancy claim. Defendants appear to acknowledge and accept both of these principles.

arises after the filing of a bankruptcy petition, the claim belongs to the bankruptcy estate only if it is "sufficiently rooted in the pre-bankruptcy past." Segal, 382 U.S. at 380. Therefore, the Court must determine whether Mr. Zuegg's malignancy claims were sufficiently rooted in the pre-bankruptcy past. Id. In doing so, it will consider the cases relied upon by the Thompson Hine Shipowners to support their contention that the malignancy claims are sufficiently rooted in the pre-bankruptcy estate to constitute property of the estate.

In Segal, the Supreme Court concluded that a tax refund originating from a tax return filed before the bankruptcy petition was property of the estate, even though the refund was not payable until after the petition was filed. Segal, 382 U.S. at 379-82. In explaining its rationale in Segal, the Supreme Court stated:

> The main thrust of [the relevant section of the bankruptcy code] is to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition. To this end the term "property" has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed. E.g., Horton v. Moore, 6 Cir., 110 F.2d 189 (contingent, postponed interest in a trust); Kleinschmidt v. Schroeter, 9 Cir., 94 F.2d 707 (limited interest in future profits of a joint venture); see 3 Remington, Bankruptcy ss 1177–1269 (Henderson ed. 1957). However, limitations on the term do grow out of other purposes of the Act; **one purpose which is highly prominent and is relevant in this case**

27

> **is to leave the bankrupt free after the date of his
> petition to accumulate new wealth in the future.**
>
> .          .          .
>
>      Temporally, two key **elements pointing toward
> realization of a refund existed at the time these
> bankruptcy petitions were filed**: taxes had been paid
> on net income within the past three years, and the
> year of bankruptcy at that point exhibited a net
> operating loss.

382 U.S. at 379-80 (emphasis added). The facts of Segal are

distinguishable from those of the present situation because,

unlike the expected tax refund in Segal, there is no evidence

that Mr. Zuegg knew of his cancer claim at the time he filed for

bankruptcy. As the Supreme Court noted in Segal, whether an

asset is "property" of the bankruptcy estate must be determined

by the purposes behind the Bankruptcy Act, and one of the

primary purposes of allowing Chapter 7 bankruptcy filings and

limiting the forfeiture of assets to those existing at the time

of the filing is to allow the bankrupt to start afresh and

accumulate new wealth in the future. In short, the rationale of

Segal (and the bankruptcy law interpreted by the Supreme Court

therein) does not support a decision to preclude Mr. Zuegg from

obtaining a financial recovery on a claim that did not exist at

the time he filed for bankruptcy. Id. This is true despite the

fact that the alleged asbestos exposure giving rise to the claim

occurred long before that bankruptcy petition was filed – a

*factual scenario considered by a bankruptcy court in Michigan in*
In re Richards, 249 B.R. 859, 861 (Bankr. E.D. Mich. 2000), upon
which Defendants rely.

    In re Richards involved an asbestos claim for an
illness that was diagnosed after a debtor had filed for
bankruptcy, and while the bankruptcy action was still pending.
The court held (in accord with Segal) that, "in determining
whether a claim is property of the bankruptcy estate, the test
is not the date that the claim accrues under state law" but
"whether the claim is 'sufficiently rooted in the pre-bankruptcy
past'." 249 B.R. at 861. The court concluded that the debtor's
asbestos-related cancer claim was sufficiently rooted in his
pre-petition past and should therefore be considered part of the
bankruptcy estate based on the two facts that: (1) "All of the
allegedly wrongful conduct giving rise to the debtor's claim
occurred prepetition," and (2) "although the diagnosis was made
seven months after the petition was filed, that timing appears
to have been more a result of happenstance than of medical
necessity. It appears likely that both the onset of the debtor's
disease and a greater portion of its progress occurred before he
filed his petition." Id. (emphasis added). The Court notes that
In re Richards is not binding on this court and, in addition,
involved claims that were governed by Michigan law (under which

29

the causes of action accrued when the plaintiff "knew or should
have known" of his asbestos-related illness, id.) rather than
maritime law (under which an asbestos cause of action accrues
when the illness manifests itself, or when the plaintiff has
knowledge of the injury and its cause, Nelson, 2011 WL 6016990
(E.D. Pa. Oct. 27, 2011)).

        The bankruptcy court in In re Richards found that the
onset of the debtor's disease and most of its progress had
occurred prior to the filing of the bankruptcy petition (as the
disease was diagnosed only seven months after the petition had
been filed – and while the petition was still pending). In the
case at hand, Mr. Zuegg was not diagnosed with cancer until over
a year after his bankruptcy petition was filed (and over a year
after the bankruptcy action was closed) - and there is no
evidence in the record that Mr. Zuegg knew of his cancer, or
experienced any symptoms of that illness prior to the date on
which the bankruptcy petition was filed (or the date on which he
was discharged from bankruptcy). As such, unlike In re Richards
(where an asbestos claim accrued under the applicable law when a
plaintiff "should have" known of his illness), it cannot be
concluded that Mr. Zuegg's malignancy asbestos claim accrued
(under maritime law) prior to the filing of his bankruptcy
petition. Moreover, without evidence in the record to the

contrary, the Court is unwilling to conclude that the onset of
Mr. Zuegg's cancer - or any of its progress - occurred prior to
the date of the filing of his bankruptcy petition. This is
because mere pre-petition exposure to asbestos did not
necessarily result in cancer. It was not until that illness
actually manifest itself that the exposure gave rise to a claim
- and an interest over which the bankruptcy trustee could
potentially have ownership. Therefore, even when applying the
rationale of In re Richards, the Court must conclude that
although the alleged asbestos exposure giving rise to Mr.
Zuegg's cancer occurred prior to the filing of his bankruptcy
petition, the post-petition malignancy claims are not
"sufficiently rooted" in his pre-bankruptcy past to be deemed
property of the bankruptcy estate.

Defendants also cite to a number of cases that did not
involve an asbestos claim. In re Webb is factually analogous
insofar as it involved a claim based upon a latent physical
injury. 484 B.R. 501 (Bankr. M.D. Ga. 2012). In that case, a
debtor received a post-petition class action settlement for
congestive heart failure he was believed to have suffered as a
result of having taken a particular medication years earlier.
Although the congestive heart failure occurred two years prior
to the filing of the bankruptcy petition, the debtor did not

know that there was any link between the medication and

congestive heart failure until well after his bankruptcy action

had been filed and closed. Upon the bankruptcy trustee's

petitioning for a reopening of the bankruptcy action to recover

this class action settlement from the debtor in order to

administer it as part of the bankruptcy estate, the court

concluded that the product liability claim was property of the

bankruptcy estate despite the fact that the debtor did not

become aware of the claim until after his bankruptcy action was

filed (and closed). Importantly, however, the court's decision

turned entirely on its reluctant acknowledgment that, under the

law applicable therein, the "discovery rule" did not apply to

the debtor's product liability cause of action. Specifically,

that court explained:

> **But after reconsidering Alvarez, the Court concludes
> that the inapplicability of the discovery rule was
> necessary to the Eleventh Circuit's holding.** The
> alleged malpractice was advising and filing a Chapter
> 7 bankruptcy instead of a Chapter 11 bankruptcy and
> failing to convert, resulting in the trustee selling
> assets at a price disagreeable to the debtor. See In
> re Alvarez, 224 F.3d at 1275; In re Alvarez, 228 B.R.
> 762, 763 (Bankr. M.D. Fla. 1998). The fight over
> ownership of the claim (malpractice arising from
> mishandling a bankruptcy case) occurred in the very
> bankruptcy proceeding that was the subject of the
> malpractice claim. Under these facts, the debtor
> necessarily discovered the injury and cause post-
> petition. **The discovery rule not applying is essential
> for the holding** — that the cause of action accrued as
> of the filing and thus was property of the estate —

because there is no logical way the discovery rule
could apply and the Court's holding stay the same.

**Because In re Alvarez is binding on this Court, and
thus all necessary elements of that decision are
binding on this Court, the Court can only conclude
that the discovery rule does not apply to the present
circumstances. The Court will look to whether the
elements of the product liability claim occurred
before or after filing.** It is undisputed that
everything, except for knowledge of cause, occurred
prepetition. The Court thus holds that the product
liability claim accrued prepetition and is estate
property.

484 B.R. at 504-05 (emphasis added). Significantly, however,

maritime law recognizes the "discovery rule" in determining the

accrual of an asbestos-related claim. See Nelson, 2011 WL

6016990 (E.D. Pa. Oct. 27, 2011) (Robreno, J.). For this reason,

the rationale of In re Webb is inapplicable to the case at hand,

which is governed by maritime law (and under which, as explained

earlier herein, Mr. Zuegg's claim did not accrue prior to the

filing of his petition and is not sufficiently rooted in his

pre-bankruptcy past to constitute property of the bankruptcy

estate).

In re Salander involved a debtor's effort to pursue a

claim against one of her creditors after her bankruptcy action

was closed. 450 B.R. 37 (Bankr. S.D.N.Y. 2011). The court held

that the claim was property of the bankruptcy estate for either

or both of two reasons: First, the court determined that, under

33

New York law, her claim had accrued pre-petition (because she
knew of the alleged forgery giving rise to her claim prior to
the filing of her petition) and was, therefore, property of the
bankruptcy estate. Id. at 46. In this regard, this case is
inapplicable to Mr. Zuegg's situation, which is governed by
maritime law, and for which there is no evidence of accrual of
his cancer claim until after the bankruptcy action was filed and
closed. See Nelson, 2011 WL 6016990 (E.D. Pa. Oct. 27, 2011)
(Robreno, J.). Second, the court found (without much
explanation) that, even if the debtor had not discovered the
extent of the alleged forgery at issue, the actions giving rise
to her claims (alleged fraudulent signing of documents) occurred
prior to the petition and were, therefore, "sufficiently rooted
in the pre-bankruptcy past." The factual scenario therein is
distinguishable from that of Mr. Zuegg's insofar as the fraud
(and accompanying harm) had occurred and existed pre-petition
regardless of whether and when they were discovered by Mrs.
Salander. In contrast, Mr. Zuegg's pre-petition asbestos
exposure did not necessarily result in an injury at all and,
instead, only resulted in injury upon the later manifestation of
his illness. As such, based upon the evidence in the record, the
crucial element of development of his asbestos illness occurred
post-petition. Therefore, the rationale of In re Salander does

not lead to a conclusion that Mr. Zuegg's asbestos claims are property of the bankruptcy estate – despite that fact that the alleged asbestos exposure giving rise to them occurred prior to the filing of the bankruptcy petition.

In re Strada Design Assocs., Inc. followed the same rationale as In re Salander and its analysis explicitly turned on the decision that formed the basis of In re Webb (Alvarez, 224 F.3d 1273). 326 B.R. 229, 236 (Bankr. S.D.N.Y. 2005). Thus, for the same reasons that In re Salander and In re Webb did not lead to the conclusion that Mr. Zuegg's asbestos claims are property of the bankruptcy estate, In re Strada does not either.

In re Patterson involved three claims that a trustee sought to pursue on behalf of the bankruptcy estate. 2008 WL 2276961 (Bankr. N.D. Ohio June 3, 2008). In that case, the court concluded that the claims belonged to the debtor (and not to the estate) because, "[t]he three claims brought by the Trustee stem entirely from a single, post-petition event [because] all the elements necessary to sustain the Trustee's three claims arose post-petition." Id. at *5. As such, the facts of the case are entirely different from those of Mr. Zuegg (whose asbestos exposure occurred pre-petition, while his cancer diagnosis occurred post-petition) and have no bearing on the case at hand.

In short, none of the cases relied upon by Defendants support the conclusion that Mr. Zuegg's malignancy asbestos claims are property of the bankruptcy estate. Applying the rationale of Segal, the Court concludes that, given the facts of the present case, and the standard set forth by maritime law for determining accrual of an asbestos cause of action (including, specifically, its utilization of the "discovery rule"), Mr. Zuegg's malignancy asbestos claims are not "sufficiently rooted in his pre-bankruptcy past to constitute property of the bankruptcy estate (pursuant to the exception to 11 U.S.C. § 541(a)(1) set forth in In re O'Dowd). Instead, the general rule of § 541(a)(1), as discussed in In re O'Dowd, 233 F.3d at 202 (limiting bankruptcy estate property to that in existence at the time of the filing of the petition), is applicable. Mr. Zuegg's malignancy asbestos claims (which did not accrue until after the bankruptcy petition was filed and after Mr. Zuegg was discharged from bankruptcy) are, therefore, not property of the bankruptcy trustee (and not subject to pursuit by creditors in the bankruptcy action). Accordingly, Defendants' motion for summary judgment on grounds of the real party in interest/standing will be denied as to Plaintiffs' post-petition malignancy claims. Anderson, 477 U.S. at 248-50.

## VI.  CONCLUSION

For all of the reasons stated above, Defendants'
motion for summary judgment will be denied.[14]

---

[14]       With respect to Plaintiffs' initial non-malignancy
claims: Defendants' motion for summary judgment on grounds of
judicial estoppel will be denied; Defendants' motion for summary
judgment on grounds that the bankruptcy trustee is the real
party-in-interest with ownership of these claims will be denied
without prejudice (pending proof that the trustee has sought to
reopen the bankruptcy action).

With respect to Plaintiffs' post-petition malignancy
claims, Defendants' motion for summary judgment will be denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLARD E. BARTEL, et al.,  :   CONSOLIDATED UNDER
(Administrators for Estate of :   MDL 875
Joseph F. Zuegg)        :
                     :
    Plaintiffs,     :
                     :
                     :
    v.           :
                     :
                     :
A-C PRODUCT LIABILITY TRUST, :   E.D. PA CIVIL ACTION NO.
ET AL.,           :   2:11-31112-ER
                     :
    Defendants.     :

## O R D E R

**AND NOW**, this **29th** day of **January, 2016**, upon
consideration of the Motion for Summary Judgment (Judicial
Estoppel) of the Thompson Hine Defendants[1] (ECF No. 79), and for
the reasons set forth in the accompanying memorandum, it is
hereby **ORDERED** that the motion is **DENIED in part** and **DENIED
without prejudice in part**, as follows:

        (1)  The motion is **DENIED** as to the arguments related
             to judicial estoppel (with respect to <u>all</u>
             claims);

---

[1]     These Defendants are: (1) Mathiasen's Tanker
Industries, Inc., (2) Trinidad Corporation, (3) Central Gulf
Lines, Inc., (4) United Fruit Company, (5) Esso Tankers Inc.,
(6) American Export Isbrandtsen Lines, Inc., (7) American Export
Lines, Inc., (8) Farrell Lines Incorporated, (9) Amerada Hess
Corporation, (10) Chas. Kurz & Co., Inc., (11) Keystone Shipping
Co., and (12) Marine Transport Lines, Inc. (ECF No. 79-1.)

(2)   With respect to Plaintiffs' pre-petition non-malignancy claims, the motion is **DENIED without prejudice** as to the arguments related to the real party in interest/standing; and

(3)   With respect to Plaintiffs' post-petition malignancy claims, the motion is **DENIED** as to the arguments related to the real party in interest/standing.

It is **FURTHER ORDERED,** in accordance with the accompanying memorandum, as follows:

(1)   The Clerk of this Court shall (a) make a copy of this order and the accompanying memorandum to be filed on the docket of Mr. Zuegg's bankruptcy case in the Bankruptcy Court for the Eastern District of Virginia (No. 99-bk-21499-SCS); (b) ascertain the identity of the trustee; and (c) have served upon the trustee a copy of said order and memorandum at his/her last known address;

(2)   The trustee will have sixty (60) days from the date of the filing of the memorandum and order on the docket of the Bankruptcy Court to provide a

signed letter to this Court (a) confirming that
he/she has petitioned the Bankruptcy Court to
reopen Mr. Zuegg's bankruptcy proceedings and (b)
certifying his/her intention to be added as a
party-plaintiff in the instant case (substituting
only as to the non-malignancy claims, with the
Administrators of Mr. Zuegg's estate (Willard E.
Bartel and David E. Peebles) continuing as the
named Plaintiffs with respect to the malignancy
claims);

(3)   Once the trustee has petitioned the Bankruptcy
Court to reopen the bankruptcy proceedings, and
until a motion for substitution as party-
plaintiff has been filed by the trustee, he/she
is to file a monthly status update with this
Court (by the last day of each month), (a)
informing the Court of the status of the petition
to reopen, and (b) certifying his/her continuing
intention to pursue the non-malignancy claims in
the instant case;

(4)   If the bankruptcy proceedings are reopened, the
trustee will have thirty (30) days from the date
of the Bankruptcy Court's order reopening those

3

proceedings to move in the instant case to be

added as a party-plaintiff (with respect to the

non-malignancy claims only);

(5)   In the event that the trustee (a) fails to advise

this Court within the sixty (60) day timeframe

that he/she has petitioned the Bankruptcy Court

to reopen Mr. Zuegg's bankruptcy proceedings and

intends to proceed with the non-malignancy

claims, (b) declines to petition for reopening of

those proceedings, (c) fails to provide a monthly

status update after having petitioned the

Bankruptcy Court, or (d) fails to move to be

added as party-plaintiff in the instant case

(substituting only for the non-malignancy

claims) within thirty days of the Bankruptcy

Court's reopening of the bankruptcy case: the

Court will give Plaintiffs an additional thirty

(30) days[2] to provide this Court with notice that

they intend to (1) pursue only the malignancy

claims, or (2) petition the Bankruptcy Court for

---

[2]        This would be ninety (90) days from the date the
memorandum and order are filed on the Bankruptcy Court's docket
(for events pursuant to 5(a) or 5(b); or thirty (30) days from
the date of the pertinent failure pursuant to 5(c) or 5(d)).

the Eastern District of Virginia to reopen the

bankruptcy proceedings and move in that court to

compel abandonment of the non-malignancy claims.


**AND IT IS SO ORDERED.**


**/s/ Eduardo Robreno**
**EDUARDO C. ROBRENO,     J.**

U.S. Bankruptcy Court
Eastern District of Virginia - Norfolk
600 Granby Street, 4th Floor
Norfolk, VA 23510

NORFOLK DIVISION
US BANKRUPTCY COURT

FEB - 4 2016

RECEIVED